## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ARTHUR UNGER, (N95436), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 22-cv-03539 |
| v. | ) | |
| | ) | Judge Jeffrey I. Cummings |
| | ) | |
| TYRONE BAKER, Warden, | ) | |
| Hill Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Arthur Unger ("Unger" or "petitioner"), an inmate at the Hill Correctional Center, brings this *pro se* habeas corpus action, (Dckt. ##1, 7), pursuant to 28 U.S.C. §2254 challenging his attempted first-degree murder conviction in the Circuit Court of Will County. Before this Court, petitioner brings a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), based on his trial counsel's performance in challenging his negotiated guilty plea. Specifically, petitioner claims that trial counsel (1) filed a "boilerplate" motion to withdraw the guilty plea, (2) included scrivener's errors in that motion, and (3) failed to make certain arguments in a motion to reconsider sentence. (Dckt. #7 at 5, 12). Additionally, petitioner argues here that before he entered his guilty plea, the trial court failed to admonish him under Illinois Supreme Court Rule 605, in violation of due process. (*Id.* at 7). For the reasons set forth below, the Court denies the petition and declines to issue a certificate of appealability.[1]

---

[1] This Court has jurisdiction over Petitioner's 28 U.S.C. §2254 petition for a writ of habeas corpus pursuant to 28 U.S.C. §§1331, 2241, and 2254.

## I.     Background

The Court draws the following factual history from the state appellate court opinion,

*Illinois v. Unger*, 2021 ILApp (3d) 180696-U (Ill.App.Ct. May 25, 2021) ("*Direct Appeal*")

(replicated at Dckt. #14-1).   State court factual findings, including facts set forth in a state court

appellate opinion, have a presumption of correctness, and the petitioner has the burden of

rebutting the presumption by clear and convincing evidence.   28 U.S.C §2254(e)(1); *Tharpe v.*

*Sellers*, 583 U.S. 33, 34 (2018) ("[the state court's] factual determination is binding on federal

courts . . . in the absence of clear and convincing evidence to the contrary."); *Hartsfield v.*

*Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562

(7th Cir. 2018).   The Court draws additional procedural history from the state court record,

(Dckt. #14, *et seq.*).

Count I of the indictment charged Unger with attempted first-degree murder of Maria

Unger on or about August 29, 2015.   (Dckt. #14-7 at 3).   The State was preparing to show at

trial that the victim, Maria Unger, had in her arms her and Unger's one-year-old daughter, when

Unger cut Maria's throat with a knife.   (Dckt. #14-7 at 7).   Multiple witnesses, including the

victim's 11-year-old and 13-year-old children, indicated that Unger and the victim were arguing

at the time.   (*Id.*).   Video surveillance from an establishment in the area could corroborate the

appearance of hostility.   (*Id.*).

In December 2017, Unger entered a guilty plea to the charge of attempted first degree

murder under 720 ILCS 5/8-4, 9-1(a)(1).   (Dckt. #14-1 at ¶4).   The plea included an agreed

sentencing cap of a term of imprisonment of up to 25 years and the State's dismissal of several

other charges.   (*Id.*).   Following the plea, the court sentenced Unger to term of imprisonment of

2

25 years. (*Id.* at ¶5). The court noted that, but for the agreed sentencing cap, it would have

sentenced defendant to 30 years. (*Id.*). The court admonished Unger as follows:

> [W]ithin 30 days from today's date you have to do one of two, if not
> both things. First and foremost, you can ask me to reconsider the
> sentence. If I grant that, I can reconsider the sentence and I can
> actually modify it to include up to the maximum, which would be
> 30 years in the Illinois Department of Corrections. If I deny it, you
> have 30 days from that date within which to file a notice of appeal.
> You can also ask me to withdraw your plea. You have to do that
> within the next 30 days. If I grant that, we start all over again,
> meaning anything that was dismissed will be reinstated. If I deny it,
> you then have 30 days from that date within which to file a notice
> of appeal.

(*Id.*; Dckt. #14-8 at 7–8).

Unger's counsel then filed a motion to reconsider sentence, (Dckt. #14-9), and a motion

to withdraw Unger's guilty plea, (Dckt. #14-10). In the motion to withdraw guilty plea, counsel

made no argument as to why Unger should be allowed to withdraw the plea. (Dckt. #14-1 at ¶6;

*see* Dckt. #14-9 at 1). At a hearing on the motions, the trial court asked counsel for the "basis

for asking to withdraw the plea." (Dckt. #14-11 at 3). In response, counsel stated that she filed

the motion to withdraw "as a matter of course," then she asked the court to reconsider the

mitigating factors discussed at the sentencing hearing. (*Id.*) The court denied both motions but

awarded Unger additional credit for time served. (Dckt. #14-1 at ¶6; *see* Dckt. #14-11 at 3).

Unger appealed seeking to file a new motion to withdraw his guilty plea. Specifically,

Unger argued on appeal: (1) that the circuit court erroneously admonished him under Illinois

Supreme Court Rule 605(b)(2), which applies to *non-negotiated* pleas, instead of Illinois

Supreme Court Rule 605(c)(2), which applies to *negotiated* pleas; and (2) that his counsel

provided ineffective assistance of counsel by (a) failing to correct the court's improper

3

admonishment, and (b) failing to state a reason in defendant's motion to withdraw his guilty plea. (Dckt. #14-1 at ¶8; *see* Dckt. #14-2 at 10, 13).

The Illinois Appellate Court found that the circuit court substantially complied with Rule 605(c)(2), (Dckt. #14-1 at ¶¶9–14), and that Unger's counsel was not ineffective, (*Id.* at 15–18). The Illinois Appellate Court affirmed the conviction of first-degree murder and the sentence of 25 years. (*Id.* at ¶20). One of the three justices dissented. (*Id.* at ¶¶22–30). In her dissent, Justice McDade wrote, as to the admonishment claim:

> the trial court's admonitions, first, failed to convey the requirements for the negotiated plea the defendant had entered; second, described an inapplicable motion to reconsider sentence as "first and foremost"; and, third, failed to inform defendant that the motion that was required to be filed had to set out grounds for seeking to withdraw the plea.

(Dckt. #14-7 at ¶28) (emphasis in original) (citing *People v. Dominguez*, 976 N.E.2d 983, 989 (Ill. 2012)).

On June 8, 2021, through new counsel, Unger petitioned the Illinois Supreme Court for leave to appeal ("PLA") from the judgment of the Appellate Court. (Dckt. #14-5 at 1). The petition framed Unger's argument as follows.

> This Court should grant leave to appeal to provide guidance to lower courts as to how much inaccurate information can be conveyed to a post-plea defendant before the admonishments fall below "substantial compliance." Where, as in this case, the court failed to recognize the type of plea, erroneously described a motion to reduce sentence as Arthur Unger's "first and foremost" post-plea option, and failed to state clearly that any motion to withdraw the plea had to state a basis for doing so, the court's inaccurate admonishments fell below any meaningful understanding of "substantial compliance." This Court should grant leave to appeal, not only to provide Arthur Unger with a new opportunity to withdraw his plea,

but also to provide guidance to lower courts regarding post-plea admonishments.

(Dckt. #14-5 at 10).   In the background section of the PLA, Unger explained,

> On appeal from this ruling, Unger argued that he should have a new opportunity to move to withdraw his plea, where the trial court failed to admonish him in substantial compliance with Illinois Supreme Court Rule 605(c), and his counsel was ineffective where she did recognize that Unger's plea was negotiated, and filed only a boilerplate motion to withdraw the plea that contained no basis for the court to do so.

(Dckt. #14-5 at 8).   The Illinois Supreme Court denied Unger's petitioner for leave to appeal.

(Dckt. #14-6).   Unger's instant habeas corpus petition followed.   (Dckt. #7).

## II.   Analysis

Unger's *pro se* habeas corpus petition, construed liberally,[2] sets forth four issues that each fall into one of two constitutional claims: ineffective assistance of counsel and due process infringement.   The Court addresses those two claims, and the arguments thereunder, sequentially as follows:

**Claim One: Ineffective Assistance of Counsel**

- **Ineffective Assistance of Counsel Argument One**: Plea counsel was ineffective for filing a "boiler plate" motion to withdraw petitioner's guilty plea, (Dckt #1 at 5);

- **Ineffective Assistance of Counsel Argument Two**: Plea counsel's motion to withdraw petitioner's guilty plea contained a scrivener's error, (*id.* at 12);

- **Ineffective Assistance of Counsel Argument Three**: Plea counsel failed to raise certain arguments in petitioner's motion to reconsider sentence, (*id.*); and

---

[2] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up) ("A document filed pro se is to be liberally construed.").

**Claim Two: Violation of Illinois Supreme Court Rule and Due Process**

- By failing to instruct petitioner to substantiate a motion, the trial court's plea admonishments failed to comply with Illinois Supreme Court Rule 605 and violated his constitutional right of due process, (*id.* at 7).

Respondent argues, in its answer, that petitioner's claims of a due process violation and of ineffective assistance of counsel are procedurally defaulted, otherwise meritless, and that a claim of mere noncompliance with Illinois rules is not cognizable. (Dckt. #13 at 7–13, 18).

### A. Petitioner's Ineffective Assistance Arguments (in Claim One) Cannot Prevail.

#### 1. Procedural Default

A petitioner may proceed with his §2254 constitutional claims for ineffective assistance of counsel in federal habeas proceeding only after those claims have been properly raised through one full round of state court review. *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017) ("A petitioner must fairly present his constitutional claims through at least one complete round of the state's established appellate review" to avoid procedural default) (cleaned up); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" either on direct appeal or in postconviction proceedings.); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this includes presenting the claims in a PLA to the state supreme court. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (citing *Boerckel*, 526 U.S. at 845-46). If the "'federal issue was not fairly presented to the state courts and those courts would now hold the claim procedurally barred,' the procedural default doctrine precludes" federal habeas corpus review. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016), *quoting Ward v. Jenkins*, 613 F.3d 692, 696 (7th Cir. 2010). If a

6

claim is procedurally defaulted, the default can be excused by a showing of either cause and prejudice or a fundamental miscarriage of justice. *See Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013); *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

Respondent argues that Arguments One, Two, and Three for ineffective assistance of counsel are procedurally defaulted because petitioner failed to properly raise the arguments through one full round of state court review as required.

### i.     Argument One is Exhausted.

Although Unger raised Argument One regarding counsel's boilerplate motion in direct appeal, (Dckt. #14-1), respondent argues that he did *not* properly raise it in his direct appeal PLA, (Dckt. #14-5).   This Court disagrees with respondent.   Indeed, in the PLA, Unger explained,

> On appeal from this ruling, Unger argued that . . . his counsel was ineffective where she did recognize that Unger's plea was negotiated, and filed only a boilerplate motion to withdraw the plea that contained no basis for the court to do so.

(Dckt. #14-5 at 8).   Unger went on to argue, "the court failed to . . . state clearly that any motion to withdraw the plea had to state a basis for doing so. . . . This Court should grant leave to appeal . . . to provide Arthur Unger with a new opportunity to withdraw his plea . . . ."   (Dckt. #14-5 at 10).

In light of these points, the petition itself adequately communicated Unger's intention to appeal the boilerplate language error such that the Illinois Supreme Court need not have read the appellate court decision to recognize the federal claim.   *Cf. Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (cleaned up) ("[A] state prisoner does not fairly present a claim to a state court if that

7

court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."); *see also Hicks*, 871 F.3d 530.

### ii. Arguments Two and Three are Procedurally Defaulted.

In Arguments Two and Three, petitioner alludes to additional alleged errors by plea counsel, including that counsel made a scrivener's error in the motion to withdraw his guilty plea (Argument One) and failed to raise certain arguments in the motion to reconsider the sentence (Argument Two).   (Dckt. #1 at 12).   Not only did Unger fail to raise these issues in the PLA, he never raised them at any point before the state courts.   As such, these claims are procedurally defaulted.   *Hicks*, 871 F.3d at 530.

It is true that petitioner exhausted another ineffective assistance of counsel argument in this case, i.e., Argument One regarding boilerplate language rather than substantive argument in the motion.   However, although ineffective assistance of counsel is a single claim, *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009) (citing *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005)), petitioner must raise the particular factual basis for each aspect of an alleged ineffective assistance of counsel allegation to properly preserve that respective argument.   *Pole*, 570 F.3d at 935 (citing *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007)); *see also Dellinger v. Bowen*, 301 F.3d 758, 766–67 (7th Cir. 2002) (to rely on ineffective assistance as cause for procedural default, petitioner must properly raise independent claim for ineffective assistance in state court).   Unger did not do that as to the particular grounds of alleged

8

ineffective assistance set forth in Arguments Two and Three, so these arguments are defaulted. *Stevens*, 489 F.3d at 894; *see Johnson v. Gaetz*, 743 F.Supp.2d 820, 826 (N.D.Ill. 2010).

Moreover, Unger failed to establish a fundamental miscarriage of justice or cause and prejudice such that this default as to Arguments Two and Three could be excused.[3] *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). The fundamental miscarriage of justice gateway typically turns on arguments of actual innocence, which remains a "demanding" and "seldom met" standard. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citing *House v. Bell*, 547 U.S. 518, 538 (2006)); *Hicks*, 871 F.3d at 531 (cleaned up) ("[A]court may reach a procedurally defaulted claim if the petitioner can demonstrate that a miscarriage of justice would result if habeas relief is foreclosed . . . This requires that the petitioner demonstrate that he is actually innocent of the offenses for which he was convicted").

To show actual innocence to defeat a default, petitioner must demonstrate that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386, *quoting Schlup v. Delo*, 513 U.S. 298, 329 (1995). Again, this is a "demanding" and "seldom met" standard. *McQuiggin*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Petitioner has not presented new, reliable evidence that was not presented at trial — such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDonald v. Lemke*, 737 F.3d 476, 483-84 (7th Cir.

---

[3] While the burden of excusing default falls to the petitioner, *Hicks*, 871 F.3d at 531, neither petitioner nor respondent here briefed arguments on either cause and prejudice, or fundamental miscarriage of justice.

2013), *quoting Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'"). Rather than arguing actual innocence here, petitioner simply suggests that his sentence might have been lower.

Regarding cause and prejudice, cause is an "'objective factor, external to [petitioner] that impeded [his] efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013), *quoting Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010); *see also Johnson v. Foster*, 786 F.3d 501, 505 (7th Cir. 2015). Examples of cause include: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)). Although ineffective assistance of counsel remains a theme throughout his petition, petitioner does not explain how any ineffectiveness prevented him from preserving Arguments Two and Three. *See Pole*, 570 F.3d at 935; *Stevens*, 489 F.3d at 894.[4] Thus, the arguments are forfeited. *Hicks*, 871 F.3d at 531 (cleaned up) ("The petitioner, however, has not advanced any argument that these exceptions [to procedural default that would allow the federal court to hear the merits of the claim] should apply here. Therefore, any argument that these exceptions apply has been forfeited and we will not endeavor to construct a legal argument on [the petitioner's] behalf.").

In sum, Arguments Two and Three are procedurally defaulted, and petitioner has not

---

[4] A more plausible explanation for the failure to raise these arguments is that they, too, lacked merit, as discussed herein.

otherwise merited the excuse of the defaults.

### 2. Petitioner's Ineffective Assistance Claims Are Meritless.

Notwithstanding the default of any such claims of ineffective assistance of counsel, the merits of petitioner's ineffective assistance of counsel claims raised in Arguments One, Two, and Three of Claim One are judged pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), which constitutes the clearly established federal law governing an ineffective assistance of counsel argument. The Court considers the merits of petitioner's ineffective assistance of counsel arguments together because "[t]he Supreme Court insists that judges must not examine a lawyer's error (of omission or commission) in isolation." *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009) (per curiam) (citing *Strickland*, 466 U.S. at 690-96). "It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Id*.

To demonstrate ineffective assistance of counsel under *Strickland*, petitioner must show both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Court's review of counsel's performance is, itself, deferential under *Strickland*. *Strickland*, 466 U.S. at 689 ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Moreover, a *Strickland* application to the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), which requires deference to the state court determination, demands a yet heightened deference to that ruling. *Knowles*, 556 U.S. at 123.

As to Argument One, petitioner did not demonstrate the state appellate court's rejection of this issue was contrary to, or an unreasonable application of, *Strickland*. Indeed, the state court first correctly identified the controlling *Strickland* standard. (Dckt. #14-1 ¶16) (citing *Strickland*, 466 U.S. at 694) ("To challenge counsel's effectiveness, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.")). The state court then reasonably applied *Strickland* when rejecting petitioner's point in Argument One. (*See* Dckt. #14-1 at ¶¶15–18).

Specifically, the Court explained:

> We may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance. A defendant's claim of error alone is insufficient to render counsel's assistance ineffective. A defendant establishes prejudice by showing that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. . . Defendant's contention that counsel failed to provide specific arguments as to why defendant should be allowed to withdraw his guilty plea . . . fails because defendant does not allege sufficient prejudice. Specifically, defendant does not allege the grounds that counsel should have stated in the motion to withdraw or whether he entered his guilty plea through a misapprehension of the facts or of the law, or if there is doubt of the guilt of the accused and the ends of justice would better be served by submitting the case to a trial. We cannot determine from defendant's generic allegations of prejudice whether counsel's allegedly inadequate motion altered the outcome of the proceeding. Therefore, defendant has not satisfied the prejudice requirement necessary for a finding of ineffective assistance of counsel.

(*Id.* ¶¶16–18) (cleaned up)).

To be sure, it is not only the high deference that compels this Court to espouse the state court's ruling; rather, the Court also does so because the state court's ruling makes sense. This Court has not been shown legitimate grounds that could have been offered in a motion to withdraw his plea that would have rendered it appropriate to grant. Indeed, when faced with Unger's motion to withdraw the plea, the court asked counsel, "What's the basis for asking to withdraw the plea? I think I went through everything on the record." (Dckt. #14-5 at 7 (citations omitted); *see* Dckt. #14-1 at ¶6). Counsel responded, "I just had to do it as a matter of course, Judge." (*Id.*) As the state court noted, Unger did not present such grounds — i.e., legitimate grounds that could have been offered in a motion to withdraw his plea that would have rendered it granted — in his direct appeal. Nor has he here.[5] It seems more likely that had counsel been instructed that she needed grounds she would not have filed it at all, as attorneys maintain the responsibility to forgo frivolous arguments. In any event, counsel maintains no obligation to raise every nonfrivolous argument requested by the defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

In Argument Two, petitioner also raises an individual concern regarding counsel's performance. Specifically, petitioner claims that his lawyer erroneously described his sentence as 25 years of "probation" rather than 25 years of "incarceration." (*See* Dckt. #14-9). The Court is mindful that a "single error may suffice" for a *Strickland* violation when it is sufficiently

---

[5] As he did on his direct appeal, Unger offered only "generic allegations of prejudice." (Dckt. #14-1 at ¶18; Dckt. #16 at 2 ("[Counsel's failure to] properly advis[e] or submit[] proper motions . . . that could have vacated the plea . . . led to prejudice which could have changed the outcome of the sentence given.")).

"'egregious and prejudicial,'" *Williams*, 557 F.3d at 538, *quoting Murray v. Carrier*, 477 U.S. 478, 496 (1986), but that is the exception to the general rule of viewing counsel's performance as a whole. *Coleman v. Neal*, 990 F.3d 1054, 1056 (7th Cir. 2021) ("*Strickland* says [] that it is the full course of representation that matters. There is a potential exception for a whopper of an error that nullifies all of the good things that counsel did . . . .") (citing *Strickland*, 466 U.S. at 690-96; *Williams*, 557 F.3d at 538).

As to Argument Two, petitioner cannot demonstrate the "probation" word choice error is sufficient to demonstrate a *Strickland* violation. Petitioner offers no reason to suspect that the state court acted as it did under the assumption that he was serving only probation. Surely a judge would not assume this conviction for attempted first degree murder was met with mere probation, especially when it had an ample record before it showing the sentence was *incarceration* for that duration, followed by three years of supervised release.

Likewise, as to Argument Three, petitioner fails to explain how mitigating factors should warrant a lower sentence. If the discussion of mitigating factors would have led the judge to sentence petitioner for shorter than he did, then the omission of mitigating factors could be prejudicial. *See Premo*, 562 U.S. at 121 (2011). Here, the trial court judge stated that he wanted to sentence petitioner to 30 years of imprisonment, which is 20 percent longer than the negotiated 25-year sentence cap, with which the judge abided. Petitioner's suggestion that those factors would have brought the judge down over twenty percent needed an explanation yet Petitioner failed to offer one. Therefore, the exacting *Strickland* standard remains beyond petitioner's reach on this claim, too.

14

Ultimately, a review of the state record as a whole shows that trial counsel provided a competent defense of petitioner. *See Williams*, 557 F.3d at 538 (citing *Strickland*, 466 U.S. at 690–96). Although rather unsuccessful, defense counsel litigated several issues surrounding the plea, sentencing, and appeals. Petitioner faced a term of incarceration of 30 years for attempted first degree murder, but with the representation by counsel, he received a lower sentence of 25 years of incarceration. The record shows competent defense attorneys analyzing the case and implementing a strategy to minimize petitioner's sentence given the colorable arguments available.

**B. The Admonishment Issue (Claim Two) is Not Cognizable, Otherwise Meritless.**

In Claim Two, read liberally, petitioner claims that the trial court's admonishment violated both an Illinois Supreme Court Rule and his federal constitutional right of due process.

To the extent petitioner claims that his admonishment violated an Illinois Supreme Court Rule, he preserved this claim by raising it on his Direct Appeal and his PLA. Nevertheless, petitioner's claim that the trial court failed to comply with Rule 605(c) is not cognizable in this Court because federal courts are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see also Brown v. Eplett*, 48 F.4th 543, 552 (7th Cir. 2022) (cleaned up) ("Errors of state law in and of themselves are not redressable in habeas corpus, and this includes state-law instructional errors in non-capital cases."); *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) (reiterating that "errors of state law in and of themselves are not cognizable on habeas review").

While petitioner's other theory on admonishment, that it violated his due process rights, would be a cognizable federal claim, this theory was not properly preserved in state court and

15

therefore cannot be considered here.  *See Hicks*, 871 F.3d at 530.   And for the same reasons articulated above as to Arguments Two and Three, petitioner has failed to offer a compelling reason to excuse his default.

Even if the claim were cognizable and preserved, the Court would not grant relief.   The last reasoned state court decision addressing the claim on the merits was the direct appeal, (Dckt. #14-1), making it the relevant decision for the Court's review.   *See Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing *Green v. Fisher*, 565 U.S. 34, 40 (2011); *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006)).   As the state court adjudicated petitioner's claim about the trial court's admonishment on the merits, the Court must apply the deferential standard set forth by the AEDPA.  *Greene*, 565 U.S. at 35.   Under the AEDPA, the Court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state court decision is based on an unreasonable determination of facts.   28 U.S.C. §2254(d).   The "AEDPA's standard is intentionally 'difficult for Petitioner to meet.'"   *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam), *quoting White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).   This "'highly deferential standard [] demands that state-court decisions be given the benefit of the doubt.'"   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) , *quoting Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).   By no reading has petitioner met this standard.

As such, Claim Two is without merit.

### III.    Notice of Appeal Rights and Certificate of Appealability

Petitioner is advised that this is a final decision ending his case in this Court.    If he wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment.    *See* Fed.R.App.P. 4(a)(1).    Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights.    However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b).    Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment.    *See* Fed.R.Civ.P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended.    *See* Fed.R.Civ.P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon.    *See* Fed.R.App.P. 4(a)(4)(A)(iv).    Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order.    *See* Fed.R.Civ.P. 60(c)(1).    The time to file a Rule 60(b) motion cannot be extended.    *See* Fed.R.Civ.P. 6(b)(2).    A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment.    *See* Fed.R.App.P. 4(a)(4)(A)(vi).

The Court declines to issue a certificate of appealability.    A certificate of appealability is appropriate only when "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).    Petitioner cannot make a substantial showing of the denial of a constitutional right, and reasonable jurists would not debate, much less disagree,

with this Court's resolution of petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. §2253(c)(2)); *Slack*, 529 U.S. at 484.

## IV.    Conclusion

For the foregoing reasons, petitioner's habeas corpus petition, (Dckt. ##1,7), is denied on the merits.   The Court declines to issue a certificate of appealability.   The Clerk is instructed to enter judgment in favor of respondent and against petitioner.

**Date: May 12, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**

18